No. 24-12289

# United States Court of Appeals
*for the*
# Eleventh Circuit

———————◆———————

BARRED BUSINESS, JOHN COLE VODICKA, STEVEN WILLIAMS,

*Plaintiffs-Appellees,*

– v. –

GOVERNOR OF THE STATE OF GEORGIA,
ATTORNEY GENERAL, STATE OF GEORGIA,

*Defendants-Appellants,*

SOLICITOR GENERAL FOR FULTON COUNTY, *et al.*,

*Defendants.*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(HONORABLE VICTORIA M. CALVERT)
Case No. 1:24-cv-02744-VMC

*AMICUS CURIAE* **BRIEF FOR FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE) IN SUPPORT OF APPELLEES SUPPORTING AFFIRMANCE**

RONALD LONDON
   *Counsel of Record*
RAUL A. RUIZ
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
*Attorneys for Amicus Curiae*
700 Pennsylvania Avenue, SE,
   Suite 340
Washington, DC 20003
(215) 717-3473

CP  COUNSEL PRESS    (800) 4-APPEAL • (334236)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 28-1(b), counsel for *amicus* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*. *Amicus* the Foundation for Individual Rights and Expression (FIRE) is a nonprofit corporation exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fed. R. App. P. 26.1(a) and 29(a)(4)(A), and 11th Cir. R. 26.1-1, 26.1-2, 26.1-3, and 29-2, the undersigned counsel for *amicus curiae* certifies the following listed persons and entities as described in 11th Cir. R. 26.1-2(a) have an interest in the outcome of this case:

1. Ronald G. London, *Attorney for* Amicus Curiae

2. Raul A. Ruiz, *Attorney for* Amicus Curiae

3. The Foundation for Individual Rights and Expression

Dated: November 15, 2024

/s/ Ronald London
RONALD G. LONDON
*Counsel of Record*

C-1

FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE,
 Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
ronnie.london@thefire.org

*Counsel for* Amicus Curiae

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT........................................ C-1

CERTIFICATE OF INTERESTED PARTIES ..................................... C-1

TABLE OF AUTHORITIES ........................................................ ii

INTEREST OF *AMICUS CURIAE* ........................................... 1

STATEMENT OF THE ISSUES.................................................. 2

SUMMARY OF ARGUMENT .................................................... 2

ARGUMENT ...................................................................... 4

    A.    The First Amendment protects expressive conduct .............. 5

    B.    The Bail Funds' payment of cash bail is expressive conduct.................................................................... 8

    C.    Failing to consider context to identify expressive conduct threatens large swaths of expressive conduct ........ 12

    D.    S.B. 63's Cash Bail Limit cannot survive First Amendment scrutiny .................................................. 16

CONCLUSION ..................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brown v. Louisiana*,
  383 U.S. 131 (1966) ...................................................................7

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ..................................................................6

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021), *cert. denied, Coral Ridge Ministries
  Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022) ......................9

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018) ...........................................3, 6, 7, 10, 11

*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004) ..................................................6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Bos.*,
  515 U.S. 557 (1995) ...................................................................7

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*,
  584 U.S. 617 (2018) ..................................................................6

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ..................................................................9

*Smith v. Tarrant Cnty. Coll. Dist.*,
  670 F. Supp. 2d 534 (N.D. Tex. 2009)..................................14

*Texas v. Johnson*,
  491 U.S. 397 (1989) .............................................................5, 16

*The Bail Project, Inc. v. Comm'r, Ind. Dep't Ins.*,
  76 F.4th 569 (7th Cir. 2023), *reh'g denied*, 2023 WL6885853
  (7th Cir. 2023)...............................................................11, 15-16

*United States v. Grace*,
  461 U.S. 171 (1983) ..................................................................7

*United States v. Virginia,*
    518 U.S. 515 (1996) ............................................................... 16

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 433 (2015) ................................................................. 8

## Statutes and Other Authorities:

U.S. Const., amend. I ............................ 1, 2, 4, 5, 6, 8, 9, 10-11, 12, 16, 18

Adam Kissel, *After More Bake Sales Across the Nation,*
    *Bucknell Looks Dumber and Dumber,* FIRE (Oct. 7, 2011),
    https://www.thefire.org/news/after-more-bake-sales-across-
    nation-bucknell-looks-dumber-and-dumber ......................................... 13

Br. FIRE *Amicus Curiae* Supp. Pet'rs No. 22-555 & Resp'ts No. 22-277,
    *Moody v. NetChoice, LLC,* 144 S. Ct. 2383 (2024) ................................. 1

Br. FIRE *Amicus Curiae* Supp. Pls.-Appellants, *Moms for Liberty –
    Brevard Cnty., Fla. v. Brevard Pub. Sch.,* 118 F.4th 1324
    (11th Cir. 2024) ....................................................................... 1

*Faculty Legal Defense Fund,* FIRE, https://www.thefire.org/
    defending-your-rights/legal-support/faculty-legal-defense-fund
    (last visited Nov. 14, 2024) ........................................................ 15

GA. Code Ann. § 17-6-15(b)(4) .................................................... 3

*Grand Valley State University: Suppression of Affirmative Action
    Bake Sale,* FIRE, https://www.thefire.org/cases/grand-valley-
    state-university-suppression-affirmative-action-bake-sale
    (last visited Nov. 14, 2024) ........................................................ 12

Nikki Schwab, *Utah Students Charge Men More for Cookies to
    Demonstrate Pay Gap,* U.S. NEWS & World Rep. (Mar. 20, 2015) ..... 12

S.B. 63 ................................................................ 2, 3, 5, 16, 17, 18

*Tarrant County College Bans Symbolic 'Empty Holster' Protest;
    Banishes Students with Dissenting Opinions to Small
    Free Speech Zone,* FIRE (May 22, 2008), https://www.thefire.org/
    news/tarrant-county-college-bans-symbolic-empty-holster-
    protest-banishes-students-dissenting ............................................. 13-14

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended the rights of individuals through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. In 2022, FIRE expanded its public advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large through a variety of activities and as *amicus curiae* in courts. *See, e.g.*, Br. FIRE *Amicus Curiae* Supp. Pet'rs No. 22-555 & Resp'ts No. 22-277, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024); Br. FIRE *Amicus Curiae* Supp. Pls.-Appellants, *Moms for Liberty – Brevard Cnty., Fla. v. Brevard Pub. Sch.*, 118 F.4th 1324 (11th Cir. 2024).

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person or entity other than *amicus* contributed money intended to fund this brief's preparation or submission. All parties consented to the filing of this brief.

The First Amendment's protection of expressive conduct is vital. People and organizations speak not only through words, but through action—whether moving a bow across the strings of a violin, kneeling in prayer, or other expressive conduct. Ensuring all Americans may express themselves free from arbitrary, targeted government regulation is thus central to FIRE's mission.

## STATEMENT OF THE ISSUES

Whether the District Court correctly enjoined S.B. 63, Section 4 because, among other things, Plaintiffs established a likelihood of success on the merits of their First Amendment claims.

## SUMMARY OF ARGUMENT

This case is about protecting lawful expressive conduct from Georgia's S.B. 63, which targets charitable bail funds with arbitrary government regulation. For Plaintiffs-Appellees Barred Business, John Cole Vodicka, and Steven Williams, the act of paying cash bail is an integral—and *expressive*—component of their criticism of pretrial detention. The Plaintiffs-Appellees' tender of cash bail to a detention center's clerk is one link in a longer chain of political expression the First Amendment protects. S.B. 63 targets this expressive conduct to eliminate

a powerful method of protesting perceived injustice, threatening Georgians' free speech rights.

S.B. 63 arbitrarily limits to three the number of times Plaintiffs-Appellees and others may express a political message by paying cash bail. GA. Code Ann. § 17-6-15(b)(4) (2023). Barred Business and Messrs. Vodicka's and Williams' church's bail fund (the "Bail Funds") solicit donations, endeavor to release pretrial detainees, publicize the plight detainees face, and continue to advocate for detainees after release. All this conduct operates as an expressive chain to advance the Bail Funds' mission to bring public scrutiny to bear on pretrial detention. It also serves as the context for the Bail Funds' payment of cash bail—which constitutes expressive conduct because "[s]urrounding circumstances . . . lead the reasonable observer to view the conduct as conveying some sort of message." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1242 (11th Cir. 2018).

The District Court correctly reviewed the activities surrounding the Bail Funds' payment of cash bail to conclude that it constitutes protected expressive conduct. Reversing the District Court's opinion and allowing S.B. 63 to stand would stymie charitable bail funds' expressive conduct—

and, consequently, their *raison d'être*—in direct contravention of the First Amendment. If this Court vacates the preliminary injunction and breaks with Circuit precedent to endorse a cramped, context-free conception of expressive conduct, a vast range of core protected expression will be at risk.

*Amicus* FIRE routinely defends students engaged in expressive conduct nationwide, and itself engages in expressive conduct by, among other things, paying for counsel for public university professors through its Faculty Legal Defense Fund, all in furtherance of a charitable mission to defend free expression on and off campus. Were this Court to sanction targeted, arbitrary restrictions on governmentally disfavored speakers' ability to engage in expressive conduct, it would dangerously erode our First Amendment freedom to speak in the way we choose, free from interference by public officials.

## ARGUMENT

Georgia's cash bond limit provision targets activity that falls within the First Amendment's broad protection of expressive conduct. Whether conduct is expressive, under the precedents of both this Court and the Supreme Court, turns on whether the circumstances would alert a

reasonable observer that something is being expressed. Under this binding standard, the District Court properly recognized the Bail Funds' charitable bail work as expressive from start to finish—and properly enjoined Georgia's S.B. 63, which impermissibly burdens a key step in this form of expression.

Specifically, the moment the Bail Funds hand cash bail to a clerk is an indispensable expressive link in a longer chain of events that communicate the Bail Funds' criticism of the cash bail system. Failing to consider the critical role of this expressive link in context in this case would both contradict longstanding precedent and threaten expressive conduct in a wide variety of other circumstances. And even if the State has any valid interest in limiting cash bail payments to three, its regulation cannot survive First Amendment scrutiny because it unconstitutionally burdens protected speech.

## A.    The First Amendment protects expressive conduct.

The Bail Funds' payment of cash bail bears all the hallmarks of expressive conduct. The Supreme Court has "long recognized" the First Amendment's "protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Rather, it protects "a wide

5

array of conduct that can qualify as expressive, including nude dancing, burning the American flag . . . wearing a black armband, conducting a silent sit-in, refusing to salute the American flag, and flying a plain red flag." *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 657, 657 n.1 (2018) (Thomas, J., concurring) (collecting cases).

Whether conduct is expressive is informed by context. If the "conduct . . . is intended to be communicative" and "in context, would reasonably be understood by the viewer to be communicative," the First Amendment protects it. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) (citations omitted). This Court has recognized the necessity of reviewing the surrounding circumstances in determining "whether the reasonable person would interpret [conduct] as *some* sort of message," emphasizing that when "answering this question, the *context* in which a symbol is used for purposes of expression is important, for the *context* may give meaning to the symbol." *Food Not Bombs*, 901 F.3d at 1241 (11th Cir. 2018) (emphasis added) (internal quotes and citations omitted). All a reasonable viewer must apprehend is "*some* sort of message," and not a "*specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004).

"Context separates the physical activity of walking from the expressive conduct associated with a picket line or a parade." *Food Not Bombs*, 901 F.3d at 1241 (citing *United States v. Grace*, 461 U.S. 171, 176 (1983); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. Bos.*, 515 U.S. 557, 568 (1995)). "Context also differentiates the act of sitting down—ordinarily not expressive—from the sit-in by African Americans at a Louisiana library which was understood as a protest against segregation." *Id.* (citing *Brown v. Louisiana*, 383 U.S. 131, 141–42 (1966)). Likewise, in addressing the facts before it in *Food Not Bombs*, this Court explained that context places sharing food in a public park "on the expressive side of the ledger." *Id.* at 1242.

And just like a reasonable viewer would not fix his gaze on only the acts of walking, sitting, or sharing food—ignoring the parade, the segregated library, and the public park—this Court must also look beyond the moment the Bail Funds pay cash bail to appreciate the surrounding circumstances. The activities surrounding the Bail Funds' payment of cash bail provide the relevant context, making the payment a symbol that communicates a message.

### B. The Bail Funds' payment of cash bail is expressive conduct.

When assessing whether conduct is expressive, the First Amendment does not permit myopic analyses that focus solely on a physical act divorced from its surrounding circumstance. Context matters. And here, the District Court correctly recognized a reasonable observer would understand the Bail Funds' cash bail payments to communicate a message, for several reasons: The payments are easily distinguishable from family or friends bailing out detainees, they are publicized, they address an issue of public concern, and they are part of the important history of charitable bail funds in this country. Prelim. Inj. 29–34, ECF No. 38.

The First Amendment thus protects the Bail Funds' charitable bail work from start to finish. To begin, it protects the solicitation of charitable donations for political messaging activities. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442–43 (2015). Through its website and flyers, Barred Business calls for donations for its "bail out campaigns," explicitly seeking small donations so more people participate and "feel empowered to add their voices to their fight against unjust pretrial detention." Prelim. Inj. 3, 7, ECF No. 38. Mr. Vodicka's published

writings on his experience paying cash bail brings donations to the charitable bail fund he operates. *Id.* at 11.

The First Amendment also protects the Bail Funds' publicization of their charitable bail work. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, (1995) (noting an activity like "handing out leaflets in the advocacy of a politically controversial viewpoint" "is the essence of First Amendment expression."). In view of staff and visitors, Barred Business volunteers wear matching T-shirts, hold signs and posters, and distribute flyers while waiting to celebrate and support the people they will bail out. Prelim. Inj. 4, ECF No. 38. Mr. Vodicka likewise expresses his affiliation with his church and converses with jail officials to arrange detainees' release. *Id.* at 9. Jail staff and others know Vodicka is there because of his work with his church's charitable bail fund. *Id.* at 10.

The Bail Funds' charitable bail work culminates in paying cash bail, an expressive choice of contributing money to a cause. As this Court's precedents recognize, that choice, too, is protected expression. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254–55 (11th Cir. 2021), *cert. denied*, *Coral Ridge Ministries Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022) ("[W]e have no problem

finding that [Defendant] engages in expressive conduct when it decides which charities to support."). Nor does the Bail Funds' expressive activity end there. Barred Business publishes pictures and videos on social media of its events where it continues to express its views on pretrial detention. Prelim. Inj. 6, ECF No. 38. And after paying cash bail, Mr. Vodicka shares his experiences through church service talks and published writings. *Id.* at 11.

A deep expressive purpose thus motivates and informs every step before, during, and after paying cash bail. The Bail Funds make public their mission to bail out impoverished inmates. Barred Business opposes mass incarceration and the money bail system. Br. Supp. Pls.' Mot. TRO & Expedited Prelim. Inj. 9, ECF No. 2. Mr. Vodicka's Church's Justice & Outreach Committee charitable bail fund exists "to oppose perceived overreaches of the criminal legal system." Prelim. Inj. 9, ECF No. 38. Vodicka's faith and his opposition to poverty-based detention drives his charitable bail work. *Id.*

Severing this chain of expression by breaking the link at the moment the Bail Funds actually donate money is inconsistent with *Food Not Bombs*' directive to assess the totality of the context. The First

Amendment protects each of these steps both individually and when woven into an expressive whole.

Despite this, the State asks the Court to adopt the Seventh Circuit's cramped view of expressive conduct from *The Bail Project, Inc. v. Comm'r, Ind. Dep't Ins.*, 76 F.4th 569 (7th Cir. 2023), *reh'g denied*, 2023 WL6885853 (7th Cir. 2023). There, the Seventh Circuit ignored context and limited its consideration of the expressiveness of the payment of cash bail to the *exact moment* someone hands money to the detention center's clerk. *Id.* at 577. But this is as improper as focusing only on the precise act of walking, sitting, sharing food, or lying down while turning a blind eye to the surrounding parade, sit-in, food sharing event, or protest die-in. While it is true the isolated act of paying bail occurs in a nonpublic forum, it is only the culminating—and necessary—act in a larger course of conduct expressing a message about pre-trial incarceration. And for purposes of determining whether conduct is expressive given its context, "location alone is not dispositive." *Food Not Bombs*, 901 F.3d at 1242. If

11

the Court sanctions this narrow understanding of expressive conduct, it will place a vast range of core protected expression under threat.

### C.    Failing to consider context to identify expressive conduct threatens large swaths of expressive conduct.

*Amicus* FIRE often defends conduct that, if viewed in the narrow way the District Court rejected but that the Seventh Circuit permits, would lose its expressive quality. Such an approach would threaten, for example, to strip First Amendment protection from college students holding a satirical "affirmative action" bake sale in which they charged different prices for baked goods to members of different races.[2] Other student groups have used a similar tactic, charging men and women different prices for baked goods to protest the gender gap in income. *See* Nikki Schwab, *Utah Students Charge Men More for Cookies to Demonstrate Pay Gap,* U.S. NEWS & World Rep. (Mar. 20, 2015), https://www.usnews.com.news/articles/2015/03/20/utah-students-charge-men-more-for-cookies-to-demonstrate-pay-gap.  In its advocacy

---

[2] *Grand Valley State University: Suppression of Affirmative Action Bake Sale*, FIRE, https://www.thefire.org/cases/grand-valley-state-university-suppression-affirmative-action-bake-sale (last visited Nov. 14, 2024).

letter to administrators, *amicus* FIRE urged Grand Valley State University not to label such an event as discriminatory, emphasizing that the school too must consider context to appreciate the bake sale's expressive purpose.

Not everything can be taken literally at face value. Satire and irony, like expressive conduct, require consideration of context to understand whether a particular event or act carries a deeper or symbolic meaning. A bake sale on its own may not be protected expression, but when infused with a pointed message within a college campus debate about issues of public importance, it can take on expressive meaning. Many universities have recognized such sales can go forward because they are expressing political messages.[3]

FIRE has likewise advocated to protect students' ability to carry empty holsters on campus as symbols to protest a ban on firearms.[4] As

---

[3] Adam Kissel, *After More Bake Sales Across the Nation, Bucknell Looks Dumber and Dumber*, FIRE (Oct. 7, 2011), https://www.thefire.org/news/after-more-bake-sales-across-nation-bucknell-looks-dumber-and-dumber.

[4] *Tarrant County College Bans Symbolic 'Empty Holster' Protest; Banishes Students with Dissenting Opinions to Small Free Speech Zone*, FIRE (May 22, 2008), https://www.thefire.org/news/tarrant-county-

the Northern District of Texas recognized, "the wearing of empty holsters may be regarded as symbolic speech" because the context included holding "protests in the public-forum areas of campus," "wearing the holsters, along with t-shirts," "discussing [student] opposition to handgun regulations," and "passing out pamphlets on the issue as part of an organized national demonstration." *Smith v. Tarrant Cnty. Coll. Dist.*, 670 F. Supp. 2d 534, 540 (N.D. Tex. 2009). "Under these circumstances," the court observed, "viewers are likely to understand the wearing of empty holsters as symbolic speech." *Id.* The approach advocated by the State here (and approved by the Seventh Circuit), looks only at the empty holster divorced from context, missing the entire message.

Upholding regulations like Georgia's cash bail limit would also threaten protected expression by advocacy organizations like *amicus* FIRE. Consider, for example, FIRE's Faculty Legal Defense Fund (FLDF), which provides free legal representation to public university faculty members under investigation or facing discipline from their

---

college-bans-symbolic-empty-holster-protest-banishes-students-dissenting.

institutions for their protected expression, initiated to ensure faculty necessary help, and promoted in part for that purpose and in part to publicize that faculty are so often on the firing line that such help is necessary.[5] A law that isolates the single act of paying for counsel to represent public university faculty and limits the number of such payments would burden expressive rights and advocacy. When FIRE pays the attorneys in its FLDF network, it does so in the context of communicating about the importance of preserving our public universities as a haven for free expression and academic freedom. Upholding a regulation targeting and limiting these payments would thus threaten the ability to engage in core expressive conduct in furtherance of FIRE's charitable mission.

These examples demonstrate why courts must consider context for purposes of determining what constitutes expressive conduct. Adopting the State's position here and the Seventh Circuit's approach in *The Bail*

---

[5] *Faculty Legal Defense Fund*, FIRE, https://www.thefire.org/defending-your-rights/legal-support/faculty-legal-defense-fund (last visited Nov. 14, 2024).

*Project* would not only shut down the Bail Funds' expression, but threaten other expression the First Amendment protects.

### D. S.B. 63's Cash Bail Limit cannot survive First Amendment scrutiny.

Assuming the State interest—ensuring bailed-out detainees show up to court—is valid,[6]  Prelim. Inj. 38, ECF No. 38, the law's cash bail limit fails because its burden on speech is greater than is essential to further that interest. As the District Court explained, the limit fails to account for the low flight and danger risk of the persons the Bail Funds bail out, does not differentiate between the severity of the crime of which bailed-out persons are accused, and arbitrarily limits cash bail payments to three. *Id.* at 39–41. These deficiencies mean the law's cash bail limit overburdens expressive cash bail payments, and thus, is unconstitutional.

---

[6] Only a regulation motivated by a "sufficiently important governmental interest" that imposes only "incidental" limitations on expressive conduct like charitable bail payments merits intermediate scrutiny. *Johnson*, 491 U.S. at 407.  To the extent Georgia's interest in limiting cash bail payments is not "genuine" or it is "hypothesized or invented post hoc in response to litigation," *United States v. Virginia*, 518 U.S. 515, 533 (1996), it is illegitimate.

Limiting the Bail Funds' ability to bail-out detainees does little to prevent freed detainees from fleeing and missing a court date. The District Court correctly observed that before detainees can be released on cash bail, a judge has already determined they are "not inherently flight risks or dangerous to the community." Prelim. Inj. 38—39, ECF 38. Evidence before the District Court demonstrated token amounts of bail ranging from $1 to $10 sometimes prevented low-risk detainees from being released. *Id.* at 39. Because Georgia's cash bail limit fails to distinguish who the Bail Funds can bail-out based on bail amount, "the restriction on [the Bail Funds'] expressive conduct . . . is greater than is essential to the furtherance of the State's interest." *Id*. Likewise, the District Court correctly noted S.B. 63 lacks sufficient tailoring by failing to distinguish by severity of crime. *Id.* at 40.

Lastly, the District Court was right to appreciate the arbitrary nature of S.B. 63's cash bail limit. *Id.* at 41. Georgia never explained, and no legislative findings ever showed, why limiting cash bail payments to three furthers the State' interest. *Id*. There is no reason why the Bail Funds paying cash bail for a fourth detainee lessens the probability detainees will attend their court dates. Without a detailed legislative

17

finding of why a three-payment-limit furthers Georgia's interest, S.B. 63 only chokes the Bail Funds' protected expressive conduct and obstructs their mission with nothing to show. The First Amendment does not tolerate such a result.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's preliminary injunction.

Dated: November 15, 2024

/s/ Ronald London

RONALD G. LONDON
  *Counsel of Record*
RAUL A. RUIZ
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE,
  Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
ronnie.london@thefire.org
raul.ruiz@thefire.org

*Counsel for* Amicus Curiae

18

**Certificate of Compliance With Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 3,250 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: November 15, 2024     /s/ Ronald London
_____
RONALD G. LONDON
  *Counsel of Record*
RAUL A. RUIZ
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE,
  Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
ronnie.london@thefire.org
raul.ruiz@thefire.org

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 15, 2024, an electronic copy of the Foundation for Individual Rights in Education Brief of *Amicus Curiae* was filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: November 15, 2024

/s/ Ronald London

RONALD G. LONDON
  *Counsel of Record*
RAUL A. RUIZ
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE,
  Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
ronnie.london@thefire.org
raul.ruiz@thefire.org

*Counsel for* Amicus Curiae